**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

---

IN RE:

**BABY FOOD MARKETING, SALES PRACTICES**                **MDL No. 2997**
**AND PRODUCTION LIABILITY LITIGATION**

---

**PLAINTIFFS MELANIE SHEPARD'S, CIARA VARGAS', TISHA VALDEZ'S AND**
**GWYNDALINE QUARLES'S RESPONSE IN OPPOSITION TO THE ALBANO**
**PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE**
**EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(a) of the Rule of Procedure of the Judicial Panel

on Multidistrict Litigation, Plaintiffs Melanie Shepard, Ciara Vargas, Tisha Valdez and

Gwyndaline Quarles  in the case titled *Shepard v. Gerber Products Company,* No.: 2:21-cv-01977-

CCC-MF (D.N.J.) opposes the motion filed by the Albano Plaintiffs to transfer this case to the

Eastern District of New York for coordination of pretrial proceedings.

As set forth in detail herein, the so-called "Related Actions" are only loosely related—the

only connection is that the defendants are all manufacturers of baby food and were  the subject of

an investigation by the U.S. House of Representatives Subcommittee on Economic and Consumer

Policy concerning the presence of heavy metals in their products. Beyond that, the Related Actions

have virtually nothing in common. Each of the defendants separately manufactured its products at

its own facilities, using its own recipes, quality control procedures as well as its own suppliers and

sources of ingredients. Each manufacturer independently marketed and advertised its own products

especially making  its own decisions on product labeling. None of the Related Actions allege that

any of the defendants acted jointly or in concert with each other in any respect. Rather, all the

defendants have in common is that they were all subject to a governmental investigation into heavy

metals in baby foods, with respect to which they were each asked to produce product test results and other documentation, and a few of the plaintiffs brought baby food from more than one of the defendants. But given the lack of any common conduct, any purported efficiencies created by an industry-wide MDL would be outweighed by the need to fully develop the case against each of the defendants individually, including highly individualized discovery. Moreover, Gerber itself has taken the position that venue is appropriate in New Jersey and, accordingly, the cases pending against Gerber in New Jersey should be consolidated and remain in New Jersey, and transfer to any other district under 28 U.S.C. § 1406(a) would be improper.[1] However, to the extent the Panel opts to consolidate pursuant to 28 U.S.C. § 1406(a), it should do so only on a defendant specific basis – e.g., sending all Gerber cases to Judge Cecchi in the District Court of New Jersey.  For these reasons, and those set forth below, the Motion to Transfer and Consolidate should be denied.

## BACKGROUND

### A.  The Gerber Cases

Gerber Products Company ("Gerber"), was one of six baby food manufactures[2] that were the subject of an investigation and recently published report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy.[3] With respect to

---

[1] *See* Gerber's Memorandum of Law and Declaration of Georgian M. De La Pena in Opposition to Plaintiff Jessica Moore's Cross-Motion to Transfer All Gerber Claims to the Eastern District of Virginia that was filed in *Jessica Moore v. Gerber Products Company* (d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, or Nestlé Nutrition North America), District of New Jersey, 2:21-cv-02516-CCC-MF (Dkt. No. 18), on April 5, 2021, attached hereto as collectively Exhibit "A".

[2] The others are: Campbell Soup and its subsidiary Plum Organic , Beech-Nut Nutrition Corporation, Hain Celestial Group, , North Caste Partners (d/b/a Spout Foods, Inc.), Nurture, Inc., and Walmart, Inc.

[3] U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021) (hereinafter, the "Report").

Gerber, the Report found that testing revealed the presence of toxic heavy metals in its baby food.[4] Specifically, the Subcommittee found that:

    a. Gerber used high arsenic ingredients, using 67 batches of rice flour that had tested over 90 ppb inorganic arsenic;

    b. Gerber used an ingredient, conventional sweet potatoes, with 48 ppb lead. Gerber also used twelve other batches of sweet potato that tested over 20 ppb for lead, the EU's lenient upper standard.  The results for its sweet potatoes and juices demonstrated its willingness to use ingredients that contained dangerous lead levels;

    c. Gerber does not test all its ingredients for cadmium. Of those it does test, it accepts ingredients with high levels of cadmium. Gerber used multiple batches of carrots containing as much as 87 ppb cadmium, and 75% of the carrots Gerber used had more than 5 ppb cadmium— the EPA's drinking water standard.[5]

Concerned that their children may have been exposed to unsafe levels of heavy metals due to prolonged consumption of Gerber baby foods, Plaintiffs filed suit in the United States District Court for the District of New Jersey on February 5, 2021. This case was the first-filed action against Gerber concerning the baby food issue.   Six other suits were subsequently filed against Gerber in the same District:  *Moore v. Gerber Products Company*, *Inc.* 2:21-cv-02516 ("*Moore*"), filed on February 12, 2021; *Cantor et al. v. Gerber Products Company, Inc*., 21-cv-3402 ("*Cantor*"), filed on February 24, 2021; *Pierre-Louis v. Gerber Products Company, Inc.*, 2:21-cv-04791 ("*Pierre-Louis"*), filed on March 11, 2021; *Fondacaro, et al. v. Gerber Products Company, Inc.*, 2:21-cv-05032 ("*Fondacaro"*), filed on March 12, 2021; *Martin, et al. v. Gerber Products Company*, *Inc*., 2:21-cv-05846 ("*Martin*"), filed on March 19, 2021; *Henry, et al. v. Gerber Products Company, Inc*., 2:21-cv-05864 ("*Henry*"), filed on March 19, 2021. All of these cases have been assigned to the Honorable Claire C. Cecchi.. All of these complaints do not name any defendants other than Gerber  None of these complaints allege or rely on any testing other than

---

[4] *Id*.
[5] *Id.*

testing performed on products manufactured by Gerber. In all of these cases, the allegations against Gerber are limited to the parts of the Report that relate to it.

Because all of the Gerber cases filed in New Jersey are related to each other, Plaintiffs Shepard, Vargas, Valdez and Quarles filed a motion to consolidate all of the cases. The motion to consolidate is pending.

Five other cases have been filed against Gerber (naming Gerber as the sole defendant) outside of the District of New Jersey  Gerber has advised the undersigned counsel that it intends to move for transfer of these cases pursuant to Rule 1401 to District of New Jersey..

**B.  The Related Actions**

As of this date, more than 66 cases have been filed against the defendants in more than 14 different jurisdictions, yet the cases against each of the defendants (with the exceptions of Wal-Mart) have gravitated towards their home jurisdictions.  Thus, approximately 13 of 16 cases against Beech-Nut are pending in the U.S. District Court for the Northern District of New York, the jurisdiction within which it maintains its headquarters. Likewise, with approximately six of eight cases against Hain on file in the Eastern District of New York, the jurisdiction where Hain is headquartered, the U.S. District Court for the Eastern District of New York has the greatest concentration of Hain cases. Four of the nine cases filed solely against Plum were filed in the District of New Jersey, where Plum's Parent company, Campbells is headquartered. And, as noted,. six of the twelve cases filed solely against Gerber were filed in the District of New Jersey, where Gerber still maintains and operates its Medical Science and Regulatory Unit related to baby foods, [6] and a motion to consolidate is pending.

---

[6] See Gerber's Memorandum of Law and Declaration of Georgian M. De La Pena in Opposition to Plaintiff Jessica Moore's Cross-Motion to Transfer All Gerber Claims to the Eastern District of Virginia that was filed in *Jessica Moore v. Gerber Products Company* (d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, or

## LEGAL ARGUMENT

The Albana Plaintiffs seek consolidation based primarily on the fact that the defendants are all in the same industry, were included in the congressional report and have complaints filed against them  which make similar claims and allegations against them. Nonetheless, prior attempts to transfer and consolidate cases based merely on the fact that the defendants are in the same industry and the plaintiffs' claims are similar have been rejected by the Panel. *See, e.g.*, *In re COVID-19 Bus. Interruption Prot. Ins. Litig*., 482 F. Supp. 3d 1360, 1362 (J.P.M.D.L. 2020) (finding "industry-wide centralization will not serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation").

As with *Covid-19*, the MDL proposed here would raise "significant managerial and efficiency concerns." As there, the transferee court here would have to establish a structure to manage the six defendants and potentially more if additional defendants such as suppliers are named. The court will be required to identify common issues to manage the discovery that are likely to differ from manufacturer to manufacturer as well as supplier to supplier. "Managing the litigation would be an ambitious undertaking for any jurist and implementing a pretrial structure that yields efficiencies will take time." *In re COVID-19*, 482 F. Supp. 3d at 1363. Moreover, the proposed consolidation involves very few common questions of fact, which are outweighed by the substantial convenience and efficiency challenges posed by managing a litigation involving an entire industry with many different suppliers of ingredients across the manufacturers. Therefore, the motion to transfer and consolidate all of the actions should be denied.

> **A. Transfer of all cases involving all defendants to one court will greatly inconvenience the parties to the Gerber cases and not create any efficiencies.**

---

Nestlé Nutrition North America), District of New Jersey, 2:21-cv-02516-CCC-MF (Dkt. No. 18), on April 5, 2021, attached hereto as collectively Exhibit  "A".

It is difficult to imagine how transfer of the six cases pending against Gerber in New Jersey to the Eastern District of New York will do anything but inconvenience the parties.  The Gerber litigation is centered in New Jersey where it was located during the majority of the time relevant to the claims asserted in the cases pending against Gerber and where it operated and conducted business, including key labeling decisions, related to its baby food products. According to Gerber, while the company completed its transition to relocate on December 31, 2019 to Arlington, Virginia, "the majority of its New Jersey workforce decided to remain in New Jersey rather than relocate to Virginia." *See* Exhibit "A" at 5. As such, "Gerber employees continue to work from New Jersey." *Id*. In addition, certain former employees who possess information relevant to the claims alleged in the pending cases against Gerber, but who no longer work for the company following the relocation, remain in New Jersey. *Id*. These individuals include former employees from Gerber's marketing department who possess information regarding the labeling, advertising and marketing of Gerber's baby food products. *Id*. Therefore, the documents and fact witnesses are also located in New Jersey. Neither Gerber, Plaintiffs Shepard ,Vargas, Valdez and Quarles nor any of the other New Jersey plaintiffs have any connection to the Eastern District of New York.[7]

The discovery in these cases will be directed solely at Gerber and its suppliers and no other baby food manufacturers. The testing will be limited to Gerber products only. The damage model

---

[7] Upon information and belief, Gerber will file Rule 1401 motions to transfer the  cases filed against outside the District of New Jersey  to the District of New Jersey. This is another reason why transfer and centralization of the Gerber cases is unnecessary. *See In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.,* 899 F. Supp. 2d 1378 , 1380 (J.P.M.L. 2012) ("where a reasonable prospect exists that resolution of Section 1404 motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to centralization").

will be limited to Gerber products and may differ from the models used to determine damages in other cases against other defendants. There are simply no pre-trial efficiencies to be gained by consolidating Gerber with the other baby food manufacturers in one court.

On the other hand, grouping the cases by defendant in each of their home jurisdictions or where they conduct(ed) significant business, a process that is already underway, is likely to provide efficiencies and should be considered prior to a Rule 1407 transfer. *See, e.g., In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376 , 1378 (J.P.M.L. 2011) ("centralization under Section 1407 should be the last solution after considered review of all other options"). Manufacturer-specific MDLs, if needed, would create numerous efficiencies. The consolidated actions, each centered around a single defendant, will each share common discovery and pretrial practice. Centralization of actions against the same manufacturer will eliminate inconsistent trial rulings related to that defendant and repetitive depositions of duplicative document discovery related to single defendant will be avoided. Leadership structures can be approved by the judge in each of the home courts, while cases against each defendant in foreign courts can either be transferred pursuant to a Rule 1401 motion or stayed, eliminating the risk of competing leadership structures.

The Albana Plaintiffs are unable to explain how consolidation of all the actions against all the defendants in one forum will lead to any efficiencies including the reduction in discovery when each of the defendants will still be subject to full discovery. To the contrary, lumping all six defendants into one forum to conduct discovery will result in discovery taking much longer than defendant by defendant discovery in the home forums. In addition, despite the Albana Plaintiffs' bald argument to the contrary, the defendants' conduct and misrepresentations are not common to each other. Each one of defendants made their own products, had their own suppliers, tested their

own products, and the levels of heavy metals detected in these products vary. Further, it remains unclear how "damages can all be considered one time rather than numerous times" merely because the defendants have all been transferred to one jurisdiction. With nothing other than conclusory statements about efficiencies to be gained, the Albana Plaintiffs proposed MDL consolidating all actions against multiple defendants into one forum should be rejected.

**B. The District of New Jersey is the most appropriate jurisdiction for the Gerber cases**.

Plaintiffs Shepard, Vargas, Valdez and Quarles do not dispute that the Eastern District of New York is an appropriate venue for the Hain cases. However, the proper jurisdiction for the Gerber cases is the District of New Jersey. Six cases filed solely against Gerber have been filed there while only one has been filed in the Eastern District of New York. As stated *supra*, Gerber's documents and witnesses will be located in New Jersey. In addition, it is believed that Gerber will be seeking to transfer all cases filed outside of the District of New Jersey to New Jersey pursuant to Rule 1401 motions Furthermore, Gerber has already taken the position that venue is appropriate in New Jersey and, accordingly, the cases pending against Gerber in New Jersey should be consolidated and remain in New Jersey, and transfer to any other district under 28 U.S.C. § 1406(a) would be improper. *See* Exhibit "A".

Moreover, Judges in the District of New Jersey have substantial experience presiding over complex litigation. This is a pivotal factor in the Panel's transfer analysis. *See, e.g.*, *In re Janus Mutual Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) ("we have searched for a transferee district with the capacity and experience to steer this litigation on a prudent course."). The Panel has repeatedly recognized that the District of New Jersey has sufficient resources to handle complex cases and is geographically convenient. *In re Zimmer Durom Hip Cup Products Liab. Litig.*, 717 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010); *In re Tropicana Orange Juice Marketing*

*and Sales Practices Litig.*, 867 F. Supp. 2d 1341 (J.P.M.L. 2012); *In re Vytorin/Zetia Marketing, Sales Practice and Products Liab. Litig.*, 543 F. Supp. 2d 1378 (J.P.M.L. 2008); *In re Insurance Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005); *In re Hypodermic Products Antitrust Litig.*, 408 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005).

   1. **Judge Claire C. Cecchi in the District of New Jersey has the Skill and Experience to Supervise the Gerber MDL.**

   As discussed herein, all six cases filed in the District Court of New Jersey against Gerber are presently pending before Judge Claire C. Cecchi and a motion to consolidate is pending. Judge Cecchi is well-suited to manage this litigation, especially if the Panel ultimately grants a motion to transfer all Gerber cases to the District of New Jersey. Judge Cecchi has served for eleven years as a federal judge, first as a magistrate judge beginning in 2006 and later as an Article III judge beginning in 2011. Notably, Judge Cecchi has presided over numerous complex cases, including two MDLs: *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, No. 2:04-cv-5184 (D. N.J. 2004); *In re Proton-Pump Inhibitor Products Liability Litigation*, MDL No. 2789, No. 1:17-MD-2789 (D. NJ.).

   Judge Cecchi's significant experience in pharmaceutical patent litigation has exposed her to complex medical and scientific issues making her well-suited to handle the Gerber litigation, which will likely encompass scientific issues related to the presence of heavy metals in the baby foods. For example, in *Teva Neuroscience, Inc. v. Watson Labs., Inc.*, No. 2:10-CV-05078, 2013 WL 1595585 (D.N.J. Apr. 12, 2013), Judge Cecchi analyzed the complex chemical mechanism of action for patents involving a method of treating Parkinson's disease. And in *Altana Pharma AG v. Teva Pharm. USA, Inc.*, No. CIV.A 04-2355, 2009 WL 5818836 (D.N.J. Dec. 1, 2009), *aff'd*, No. CIV.A 04-2355, 2010 WL 451168 (D.N.J. Feb. 5, 2010), Judge Cecchi considered (and reconsidered) a complex discovery dispute regarding pharmaceutical expert reports. Plaintiffs are

confident that Judge Cecchi has the requisite experience and scientific acumen to handle a complex, multidistrict litigation involving Gerber and will promote the goal of a "just resolution" of this MDL "as speedily, inexpensively, and fairly as possible."

### C.  If the Panel decides that a single industry-wide MDL is warranted, the District of New Jersey is the most appropriate jurisdiction.

For the reasons discussed above, Plaintiffs do not believe a single, industry-wide MDL is appropriate.  Nevertheless, if the Panel disagrees, the District of New Jersey should be selected.

The selection of a site for an MDL Court is generally guided by multiple factors and balancing of various interests "based on the nuances of a particular litigation." *See* Robert A. Cahn, A LOOK AT THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION, 72 F.R.D. 211, 214 (1977). Factors that have been considered include (1) the location of relevant documents and witnesses, (2) the backlog of a court's civil docket and the extent to which it is overtaxed with other MDL cases, (3) a centrally located forum for national litigation, (4) the potential for state-federal coordination, and (5) the preference of the parties.[8]

The District of New Jersey is better suited to meet the goals of "efficiency" and "economy" in an MDL proceeding than the venue recommended by the Albano Plaintiffs.  This Panel has previously held that the District of New Jersey is a convenient location that has sufficient resources to handle an MDL proceeding. *See, e.g., In re: Nickelodian Consumer Privacy Litig.*, 949 F. Supp. 2d 1377 (J.P.M.L. 2013) (finding that the District of New Jersey is "a convenient and accessible forum, relatively close to potential witnesses and evidence located in New Jersey and New York

---

[8] *See id.* at §§ 6:1-6:23; *In re Inter-Op Hip Prosthesis Prods. Liab. Litig.*, 149 F. Supp. 2d 931, 933-934 (J.P.M.L. 2001); *In re: Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 368 F. Supp. 2d at 357*; In re Thaxton Group, Inc. Sec. Litig.*, 323 F. Supp. 2d 1374, 1375 (J.P.M.L. 2004); *In re Cuisinart, 506 F. Supp. 2d 651, 653* (J.P.M.L. 1981).

City."). The District of New Jersey also has been considered a strong candidate for transfer when many witnesses and documents relevant to the case are located there. *Id*.; *see also In re: Benicar (Olmesartan) Prod. Liab. Litig.*, 96 F. Supp. 3d 1381, 1383 (J.P.M.L. 2015) (holding the District of New Jersey was the appropriate transferee court because defendants "are headquartered in that district, and thus many witnesses and relevant documents are likely to be found there"); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1382 (U.S. Jud. Pan. Mult. Lit. 2019) ("Many of the defendants have their U.S. headquarters in New Jersey…. Thus, common documents and witnesses likely will be located in this district"); *In re: Merck & Co., Inc., Securities, Derivative & ERISA Litig.*, 360 F. Supp. 2d 1375, 1377 (J.P.M.L. 2013) (documents and witnesses likely located at Merck's New Jersey headquarters).

The District of New Jersey is the most logical jurisdiction for a single MDL.  Two of the six defendants -- Plum and Sprout --maintain their headquarters in New Jersey.  Additionally, Gerber maintained its headquarters in New Jersey until December 31, 2019 before relocating to Virginia.  Nevertheless, more than half of Gerber's former New Jersey workforce remains in New Jersey. [9] In recognition of Gerber's extensive New Jersey ties, seven of the twelve filed cases against Gerber are pending in New Jersey.  Accordingly, the vast majority of the relevant witnesses for half the defendants are going to be located in the New Jersey region.

The District of New Jersey also is located in a major metropolitan area that can accommodate counsel and courthouses are well equipped to handle an MDL proceeding.[10] Assigning an MDL to the District of New Jersey also will facilitate coordination with any State court proceedings that are ultimately filed in New Jersey. Any individual actions filed by New

---

[9] *See* Exhibit "A" at 5
[10] *See, e.g., In re Educational Testing Service PLT 7-12 Test Scoring Litigation*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004); *In re Inter-Op Hip Prosthesis Products Liability Litigation*, 149 F. Supp. 2d 931, 933 (J.P.M.L. 2001).

Jersey citizens against Plum or Sprout would have to be filed in New Jersey state courts.  *See, e.g.,* *In re Internal Revenue Service § 1031 Tax Deferred Exchange Litigation*, 528 F. Supp. 2d 1343, 1344 (J.P.M.L. 2007) (transfer appropriate where defendant is located in venue and state court proceedings would "enhance potential for coordination between state and federal courts regarding this matter."). Having both state and federal judges in close proximity in the same state as documents and witnesses will promote the just and efficient conduct of the litigation.

The District of New Jersey also has the resources available and the relative congestion of their dockets that weigh in their favor. *See, e.g., In re GMAC Insurance Management Corp. Overtime Pay Litigation*, 342 F. Supp. 2d 1357 (J.P.M.L. 2004) (the M.D. Fla. had "the resources available to manage this litigation"); *In re Baycol Products Liability Litigation*, 2001 WL 34134820 at *2 (J.P.M.L. 2001) (Minnesota courts are "not currently overtaxed …"). While the District of New Jersey has a caseload per judgeship higher than the national average at 2,742 pending actions per judge[11], that number is skewed due to the eight pending MDLs in the District.[12] Additionally, the Biden administration has announced its intention to nominate two individuals to serve in the District of New Jersey, which when confirmed will further reduce the current judicial caseload.[13]  As discussed above, both Judge Cecchi is highly competent and respected jurist, and will steer this litigation on a prudent course.  Moreover, Judge Noel Hillman  who is presiding over the four cases filed solely against Plum in the District of New Jersey would also be an excellent choice to preside over the MDL. Judge Hillman has 15 years of experience on the federal bench and has handled a substantially similar MDL: *In re Pet Foods Products Liability Litigation*,

---

[11] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf
[12] https://www.njd.uscourts.gov/mdl-cases
[13] https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/30/president-biden-announces-intent-to-nominate-11-judicial-candidates/

MDL No. 1850.  Judge Hillman successfully guided this significant consumer case action to a $24 million settlement, which he approved with a 64-page opinion and order.

Finally, in addition to many of the plaintiffs, defendants Plum and Gerber have also expressed a preference for the District of New Jersey.  *See Moore v. Gerber Products Company*, 2:21-cv-02516 (D.N.J.) (ECF No. 18); *Gulkarov v. Plum, PBC*, 4:21-cv-00193 (N.D.Cal.) (ECF No. 30).

The location of documents and witnesses, experience of these judges, the caseload in the district, the convenience to major airports and abundance of hotels, and preference of the parties, weighs decidedly in favor of the District of New Jersey.

## CONCLUSION

For the forgoing reasons, the Albano Plaintiffs' motion to transfer this case and the related Gerber cases pending in the District of New Jersey to the Eastern District of New York should be denied.

Dated:  April 13, 2021        Respectfully submitted,

*/s/ Charles E. Schaffer*
Charles E. Schaffer
David C. Magagna Jr.
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 191060
Tel: 215-592-1500
Fax: 215-592-4663
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Jonathan Shub
Kevin Laukaitis
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor

Haddonfield, NJ 08033
Tel: (856) 772-7200
Fax: (856) 210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Gary M. Klinger
**MASON LIETZ & KLINGER, LLP**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: 202-640-1168
Fax: 202-429-2294
gklinger@masonllp.com

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8297
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

Gary E. Mason
Danielle Perry
**MASON LIETZ & KLINGER, LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
gmason@masonllp.com
dlietz@masonllp.com

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

Charles E. Schaffer, an attorney, hereby certifies that he caused the above and foregoing *Response* to be served upon counsel of record in this case via the U.S. Judicial Panel on Multidistrict Litigation CM/ECF System on this 13th day of April, 2021.

/s/ Charles E. Schaffer